## GODFREY INVESTMENT CO. v. STURGEON et al.

No. 19819. Opinion Filed June 23, 1931.

Hoyt & Stephens and Hall & Thompson, for plaintiff in error.

Meacham, Meacham & Meacham, for defendants in error and cross-petitioner John M. Sturgeon.

KORNEGAY, J. This case comes to this court by a proceeding in error from the district court of Custer county. The regular judge, E. L. Mitchell, was disqualified by reason of having been counsel of some of the litigants with reference to the matter involved in the suit. By agreement a special judge was named, W. P. Keen, who qualified and tried the case. There are several angles to the case below, and a part of the litigants have come to this court and have filed the case-made and petition in error. The case-made was filed here on October 9, 1928, by the Godfrey Investment Company, the plaintiff in error, and the defendants in error, are as named therein, are R. L. Sturgeon, Ellen V. Sturgeon, John M. Sturgeon, and C. G. Shull, Bank Commissioner.

An assignment of error of the Godfrey Investment Company complained of the action of the court below in overruling its motion for a new trial, and that there were errors in the assessment of the amount of recovery

upon the notes and mortgages sued on by the plaintiff in error, Godfrey Investment Company, and that the decision is not sustained by sufficient evidence, and that it is contrary to law.

An assignment was made that the court erred in rendering a judgment for any amount in favor of the Bank Commissioner. An assignment of error was made to the effect that the court erred in rendering judgment in favor of John M. Sturgeon upon the tax sales certificate, in making the same a lien against the lands involved, and refusing to hold the certificate null and void, and in refusing to cancel the same. An assignment of error was made to the effect that the court erred in rendering judgment in favor of the defendant John M. Sturgeon for the money voluntarily paid by him to the Commissioners of the School Land Department on the interest and purchase price of the premises, and decreeing him to have a lien, and also in overruling its demurrer to the evidence.

John M. Sturgeon filed a cross-petition, and he complained of the action of the court in overruling his demurrer to the evidence of the plaintiff, Shull, and also the cross-petitioner, Godfrey Investment Company. He further complains of the action of the court in not sustaining his motion for a verdict, and also in overruling his motion for judgment, also in holding that the tax deed was void, and also in overruling his motion for a new trial. No complaint appears to have been made by the Bank Commissioner, nor has he filed any brief. Neither have the defendants Robert Lee Sturgeon and Ellen V. Sturgeon filed any briefs.

This cause started in the district court of Custer county by the filing of a petition by the state of Oklahoma ex rel. O. B. Mothersead, Bank Commissioner, against R. L. Sturgeon, Ellen V. Sturgeon, and the Godfrey Investment Company, on the 7th of June, 1927. Attorney for the plaintiff was A. E. Darnell. This petition claimed that the defendants Robert Lee Sturgeon and Ellen V. Sturgeon, on the 30th of December, 1921, executed to the Farmers State Guaranty Bank of Thomas, Okla., two promissory notes, one for $3,250, and one for $3,000, both due on the 30th of June, 1922, and drawing interest from date at 10 per cent. per annum, and calling for an attorney's fee of 10 per cent., and that a mortgage was executed by the makers of the notes covering the N.W.¼ of sec. 36, T. 15 N, R. 15 W, and that it was regularly acknowledged and recorded, and that, in November, 1923, the bank became insolvent and the Bank Commissioner took charge. It averred that $2,000 was paid on the first note on the 12th of June, 1923, and $1,900 on the second note on the 15th of June, 1927, but the balance had not been paid, and it sought a personal judgment for the balance of $3,498.45, and attorney's fee in the amount of $625 and for foreclosure of the mortgage, and all other relief.

It averred that the Godfrey Investment Company claimed an interest, but that the same was inferior to that of plaintiff. It also averred that John M. Sturgeon was the son of the codefendants, Robert Lee Sturgeon and Ellen V. Sturgeon, and that the three had collected the rents and profits from the premises, and in order to secure title of the property through tax deed and to avoid the lien of plaintiff's mortgage, had permitted the taxes to become delinquent and the land to be sold, and that it had been bought in by John M. Sturgeon as agent of his codefendants, Robert Lee Sturgeon and Ellen V. Sturgeon, and that the money had been derived from the rents and profits of the land, and that John M. Sturgeon was claiming some right, title, and interest adverse to the plaintiff.

The Godfrey Investment Company moved to dismiss the action on the ground that another action was pending between the parties, but what became of this motion the record does not show. It does show a demurrer, however, filed by Robert Lee Sturgeon and Ellen V. Sturgeon to the action because another action was pending and for the lack of the facts to make a cause of action. John M. Sturgeon filed the same kind of a demurrer. The attorneys for John M. Sturgeon were the same as the attorneys for Robert Lee and Ellen V. Sturgeon, they being Messrs. Meacham, Meacham, and Meacham.

An answer and cross-petition was filed by the Godfrey Investment Company on the 2nd day of November, 1927. It averred that the notes were paid that were declared on by the plaintiff, and the mortgage should have been released. Also, that $4,000 was paid by the Godfrey Investment Company pursuant to an agreement to release mortgage upon such payment; that the Godfrey Investment Company had been employed by the defendants Robert Lee and Ellen V. Sturgeon to procure a $20,000 loan upon the N. W. ¼ and the S. W. ½ of section 36, T. 15 N., R. 15 W., and they had made a first mortgage to the Godfrey Investment Company for that amount, and also a second mortgage, the latter to secure a $3,000

commission for getting the loan and handling it; that in order to float the loan it was necessary to have a clear title, and that the plaintiff bank had agreed that, if the Godfrey Investment Company would pay $4,000 to the plaintiff bank on its paper, it would release its mortgage upon the property, and that the money had been paid for that purpose, and that therefore the claim of the plaintiff was not a lien upon the land.

The Godfrey Investment Company set up six causes of action upon separate notes of $500 each, drawing 10 per cent. per annum from February 15, 1923, until paid, the last two maturing on the 1st of March, 1926, and two of them being due the 1st of March, 1925, and two being due March 1, 1924. It also set up a second mortgage on the W. ½ of section 36, T. 15 N., R. 15 W., executed by Robert Lee Sturgeon and Ellen V. Sturgeon to secure this, and asked for foreclosure for the amount and attorney's fees. It further stated that the defendants had allowed taxes to accumulate for 1923, '24, '25, and '26, and that there was a first mortgage upon the premises for $20,000, and that the interest for the years 1923, '24, '25, '26, and '27 had not been paid by the defendants, and that the Godfrey Investment Company had made payments on account of interest of the first mortgage as follows:

| | |
|---|---|
| October 27, 1923 | $87.63 |
| February 16, 1926 | 247.00 |
| October 27, 1923 | 129.00 |
| January 6, 1926 | 251.00 |
| June 14, 1924 | 16.25 |

—making a total of interest advanced $730.94.

It further set up the fact that John M. Sturgeon had colluded with his father and mother, Robert Lee and Ellen V. Sturgeon, and had collected the rents, and had permitted the taxes to become delinquent, and that Robert Lee Sturgeon had purchased tax sales certificate covering the land with the proceeds of the premises, and that John M. Sturgeon was claiming some interest. It further averred that any right the Bank Commissioner would have in it is inferior to the cross-petitioner's mortgage. It averred that all of the amounts set out were secured by this mortgage. It asked for a receiver, alleging that there were $2,200 in taxes due, and for a recovery of the money in a foreclosure of the mortgage.

As the seventh cause of action, in paragraph 16, it is claimed that the $3,000 secured by the second mortgage was given for services in negotiating the loan and looking after the property and various things. It further averred that it was for compensation for services that the notes were given;

that the notes in the main mortgage were 15 notes in the sum of $1,000 each, 8 notes in the sum of $500 each, and 10 notes in the sum of $100 each, all of the notes being dated February 15, 1923, and made due and payable on March 1, 1933.

It averred that, pursuant to contract in negotiating the loan, it had sold of these notes $13,000 to various individuals, but that it had not been able to sell the others owing to the defect in the title, and that it would not be able to make further sale, and it tendered back the notes that had been made to it in the sum of $9,400. It averred, further, that it had made the advancement of $730.94, referred to above, to protect its interest under the contract.

Its prayer was for personal judgment against Robert Lee Sturgeon and Ellen V. Sturgeon for $3,000 and this $730.94, and for a foreclosure of its mortgage on the premises against each and all of the defendants. Notes, mortgages, and the contract were all set out in full.

Mary E. Edwards made application for leave to file petition of intervention on the ground that she held one of the negotiable bonds that was secured by this $20,000 mortgage, but nothing appears to have come of this application.

A reply was filed by the Godfrey Investment Company to the cross-petition of the defendant Sturgeon. This reply attacked the the validity of the tax deeds for various reasons, and among others, insufficiency of notice of application, and the failure of the county clerk to attach his warrant to the tax list, and that the title had not passed from the School Land Department, and that there was another action pending between it and the holder to cancel the certificates as being void. It asked for a decree canceling these tax deeds.

Commissioner Shull was substituted for Mothersead. Robert Lee Sturgeon and Ellen V. Sturgeon filed an answer to the petition of the Bank Commissioner, admitting the execution of the notes and claiming that the notes had been liquidated for a $4,000 payment and the making of a new note for $3,200, and averring that the mortgage was to be released on the payment of the $4,000. Robert Lee Sturgeon and Ellen V. Sturgeon filed an answer and a cross-petition to the Godfrey Investment Company's claim. They set up a failure of consideration and fraud in the procurement of the notes. They averred that, by reason of not getting the $20,000, they had been damaged. They said that $4,000 of the money, represented by the note and mortgage that was made to

the Godfrey Investment Company, was paid to the Farmers State Guaranty Bank at Thomas, in June, 1923, and that, on the 9th of February, 1924, they had paid out an additional $6,000, and refused to complete the transaction; that the note and mortgage being on record clouded their title, and they could not do anything with it, and their title had been slandered, and they asked for $20,000 actual damages and $5,000 exemplary damages.

On the 15th of March, 1928, John M. Sturgeon filed an answer to the petition of the plaintiff, and also to the cross-petition of the Godfrey Investment Company. He claimed that his tax sale certificate and his procedure to get the tax deed were all right, and that the tax deed was valid, and asked that his title be quieted. The parties went to trial on the 15th of March, 1928, before the special judge, Keen.

The record is voluminous, covering something over 600 pages. The journal entry of judgment, in the record at page 590, made on the 19th of April, 1928, found that the defendants Robert Lee Sturgeon and Ellen V. Sturgeon were indebted to the plaintiff upon the notes and mortgage sued on in the sum of $700, with interest at the rate of 10 per cent. per annum, from the 1st day of February, 1923, and allowed $200 attorney's fees, and ordered a foreclosure of the mortgage for that amount upon one quarter section of the land, namely the N. W. ¼, sec. 36, T. 15 N., R. 15 W. The court further found that the Godfrey Investment Company was entitled to recover, on its $3,000 claim, $750 with interest at the rate of 7 per cent. per annum, and $86.63 with 10 per cent. interest from October 27, 1923, $247 with 10 per cent. interest from February 19, 1926, $129.96 with interest at 10 per cent. from October 27, 1923, and $251.10 with interest at 10 per cent. from June 10, 1924, and $200 attorney's fees, and aside from these amounts there was a failure of consideration on the $3,000 note. The court ordered a decree of foreclosure for this amount subject to the plaintiff's lien for $700, and subject to the lien of the defendant John M. Sturgeon.

The court found that Robert Lee Sturgeon and Ellen V. Sturgeon were not entitled to recover against the Godfrey Investment Company for damages. The court found that the tax deed was void, but held that, by reason of the tax sale certificates, the holder of the tax deed acquired in the real estate, namely, W. ½, sec. 36, T. 15 N., R. 15 W., the interest acquired by Robert Lee Sturgeon and Ellen V. Sturgeon by reason of the certificate of sale issued to them by the Commissioners of the Land Office. It further found that he had advanced to the Commissioners of the School Land Department $924.-29 as payment of interest and principal due the state of Oklahoma upon the purchase price of the land. The court further found that, on January 28, 1926, John M. Sturgeon purchased the tax sale certificates issued in 1924, based on the sale for the 1923 delinquent taxes, and that, figuring the deferred payments advanced and the purchase of certificates, said John M. Sturgeon was entitled to a judgment of foreclosure for $3,262.84, which was coequal with the lien established in favor of the plaintiff.

The court further found that, on the 15th of February, 1923, Robert L. Sturgeon and Ellen V. Sturgeon had executed a $20,000 mortgage to the Godfrey Investment Company, and that they sold of the bonds securing it $10,602.72, leaving unsold $9,400 in amount, which was tendered into court, and that on said mortgage the Godfrey Investment Company had paid the sum of $10,602.72, and that if the company had made the payments on the date of the note and mortgage, it would have required only $10,300, and it gave to the Godfrey Investment Company a lien for $10,300, with 6½ per cent. interest per annum from February 15, 1923, and released the mortgage for all above this.

Decree was entered accordingly. The decree gave to the Bank Commissioner the first lien on the N. W. ¼ of section 36, and to the Godfrey Investment Company the amount found due it and the costs of the action expended by it, making this a lien on the W. ½ of section 36; decreeing this, however, to be inferior to the lien of the plaintiff below. The tax deed was decreed to be void, but the court decreed that there was $3,262.84 due John M. Sturgeon by virtue of his tax sale certificates and the money advanced to the state of Oklahoma in payment of the installment of principal and interest due the state of Oklahoma upon the purchase price of the lands, to draw the legal rate of interest, and the amount of the tax certificates was to draw interest or penalty provided on tax sale certificates.

It was decreed, as to the $20,000 mortgage, that it was a lien for $10,300, with interest at 6½ per cent. from February 15, 1923, subject, however, to the lien established in favor of the plaintiff and the lien established in favor of the defendant John M. Sturgeon, but superior to the lien of the defendant and cross-petitioner, the Godfrey Investment Company. A receiver was appointed and directions made to sell the land at the end of six months, and to apply the proceeds as

follows: (1) To the payment of cost; (2) to the payment of the judgment rendered in favor of the plaintiff from the proceeds of the sale of the N. W. ¼; (3) to the payment of the judgment rendered in favor of the plaintiff and cross-petitioner, the Godfrey Investment Company; and that the sale should bar the claims of Robert Lee Sturgeon, Ellen V. Sturgeon, and John M. Sturgeon, and all persons claiming under them since the commencement of the action, except John M. Sturgeon, who was to be foreclosed from asserting any claim except the sum of $3,262.84, which represented the lien established in his favor coequal with that of plaintiff and subject to his right of subrogation to the rights of the state of Oklahoma in the sum of $924.29 included in said sum, and with the further direction that a writ of assistance be issued by the clerk of the county to the sheriff upon a sale being had.

The plaintiff excepted to everything that was not in his favor, and the Godfrey Investment Company, the defendant and cross-petitioner, in like manner excepted, and the defendants Robert Lee Sturgeon, Ellen V. Sturgeon, and J. M. Sturgeon in like manner excepted, and all parties gave notice of appeal and had it entered on the docket, and the journal entry, as to form, was approved by an attorney of each party. Within three days, motions for new trial were filed by plaintiff in error and cross-petitioner, and overruled on the 11th of May, 1928, and exceptions were taken.

The case is docketed here as the Godfrey Investment Company, Plaintiff in Error, v. Robert Lee Sturgeon, Ellen V. Sturgeon and John M. Sturgeon, and C. G. Shull, State Bank Commissioner, Defendants in Error, and the plaintiff in error has filed a brief, and a brief has been filed on behalf of the defendant in error John M. Sturgeon, but there are no briefs on behalf of the Bank Commissioner, or on behalf of Robert Lee Sturgeon or Ellen V. Sturgeon.

The plaintiff in error, the Godfrey Investment Company, presents a brief, and at page 60 of that brief is its first proposition. It sets out fully the items that were embraced in the finding in its favor under its second mortgage, and the evidence that it claims justified its assignment of error that the court did not allow it enough on this account. An investigation of all the evidence in the case indicates that if error was committed by the court in making this allowance, it was in favor of the Godfrey Investment Company. The Sturgeons needed $20,000. The Godfrey Investment Company undertook to get it in consideration of a $3,000 second

mortgage. It failed to get it, and the owner of the land claimed in the court below that there was an entire failure of consideration for the $3,000 second mortgage.

The evidence strongly indicates that the Godfrey Investment Company relied on the sale of the bonds issued against the property of the borrower for the purpose of getting the money that was actually paid out. However, before procuring the loan, the company took a first and a second mortgage on the property and placed them on record with the understanding that, out of the proceeds of the loan, all of the existing liens, as shown by an abstract, would be cleaned up.

The application for the loan was made on the 14th day of February, 1923. The $3,000 notes and mortgage were dated the 15th of February, 1923, and the mortgages recorded on February 26, 1923. The $20,000 notes and mortgage to the Godfrey Investment Company were made the same day. The $3,000 mortgage covered all the profits, revenues, royalties, rights, and benefits accruing to the party of the first part, and the oil, gas, mineral, and other leases on said premises.

We do not think that the Godfrey Investment Company can successfully claim that it was error not to allow the full $3,000 commission under the circumstances. No one else seems to be complaining as to the amount of the $750 allowed it. As to the other amounts, the record indicates that there were interest items advanced by the Godfrey Investment Company to cover interest on the outstanding bonds that were a lien on the land under the $20,000 mortgage; and that all such items were fully allowed.

An examination of the terms of the loan agreement on page 82 of the record, and a consideration of what was actually done by the Godfrey Investment Company, is convincing that the contract was not fulfilled. The court below allowed enough, as it appears to us, for what was actually done.

The second proposition advanced, on page 70 of the brief of the plaintiff in error, complains of the action of the court, at page 594 of the record, in holding that the tax sale certificates, on which the void deed was based, were good, and allowing a judgment decreeing a lien for the amount of the taxes, and also for the amount of money which John M. Sturgeon had paid to the School Land Department, totaling $3,262.84, and decreeing this a lien superior to that of the plaintiff in error.

It is urged that John M. Sturgeon asserts his ownership by reason of the tax deed, as

found in the record at page 129. However, this was an equity case, and it was a case involving equitable principles, in that Sturgeon paid the taxes, and his attorney apparently thought he got title, but the court of equity set aside this tax title on equitable and legal grounds, and it undertook to do justice between the parties by giving to the man who had advanced the money for the taxes the amount of the taxes, as well as the amount that was paid to the School Land Department.

It is clear that, under the circumstances of this case, if the Godfrey Investment Company had perfected what it set about to do, and had gotten the money out of the proceeds that it was to get, these two items would have been paid. The point insisted on. however, is that, because the treasurer got his warrant to collect the taxes from the assessor, as distinguished from the county clerk, the tax items were not allowable, and some Oklahoma cases are cited to that effect.

In the body of the brief, the following is found:

"Had the former owners of the land brought some action of an equitable nature and in that action attacked the validity of the tax sale certificates, and the trial court had, in furtherance of equity, required the said former owners, upon whom the duty rested to pay the tax, to pay the amount thereof into court, this court might perhaps have upheld such order even though the tax sale certificates were absolutely void"

—and the argument is made that it was inequitable in this case on the part of the court below to allow these tax payments to be made a lien, upon the ground that the proceeds of the crops raised on the land had been used to acquire these tax certificates. A reading of the evidence in this case generates a strong suspicion that there is something to the contention, but the parties testified otherwise, and evidently the court took that into account when it rendered the decree. There is no brief here for the Bank Commissioner, and complaint is made by the Godfrey Investment Company, in one of its assignments, that the Bank Commissioner should not have been allowed anything. Why the court reduced the allowance in favor of the Bank Commissioner is not exactly clear under the record, but the amount sued for and actually due the defunct bank was greater than the amount allowed. There appears to be no contention that the money advanced by the Godfrey Investment Company, and actually paid on the bank's mortgage. should be repaid before the balance due this bank should be paid.

Apparently the same situation below, the attorneys all appearing to insist on demurrers to evidence and to pleadings and oral motions for judgment. See record, pages 570-575-580. There does not appear in the record any request for special findings of fact or conclusions of law.

The burden here is upon the Godfrey Investment Company to demonstrate that the balance due the bank, after the payment of the $4,000 made by it to the bank, was less than the amount allowed, $700, or that there was an agreement carried into effect by which preference in the distribution should be given the Godfrey Investment Company over the bank for the admitted balance due it, as its mortgage was of record prior to the time the Godfrey Investment Company became interested.

We do not think the evidence called to our attention in this record would warrant us in reversing the lower court on this phase of the case. It is strenuously urged, however, that there was no authority to expose the land for sale to taxes, though it is not seriously urged that the taxes were not due.

From an inspection of section 9321, C. O. S. 1921, which is as follows:

"9321. Record for Taxation—Tax Sales. The Commissioners of the Land Office shall, as soon as possible after the sale of lands, transmit to the clerk of each county in which any lands mentioned in this article have been sold, a detailed description of each parcel of the land so sold and the names of the purchaser, and the clerk shall extend the same upon the tax rolls for the purpose of taxation, and the same shall thereupon become subject to taxation the same as other lands. and the taxes assessed thereon collected and enforced in like manner as against other lands: Provided, however, that the purchaser, at a tax sale of any such lands sold for delinquent taxes, shall acquire by virtue of such purchase only such rights and interest as belong to the holder and owner of the certificate of sale issued by the Commissioners of the Land Office under the provisions of this article and the right to be substituted in the place of the holder and owner of such certificate of sale as the assignee thereof; and upon a production to the proper officer of a tax certificate given upon such tax sale, in case such lands have been redeemed, such tax purchaser shall have the right to make any payment of principal or interest then in default upon such certificate of sale as the assignee thereof. But no tax deed shall be issued upon any tax certificate procured under the provisions of this article while legal title of said lands remains in the state of Oklahoma"

—it is found that the Legislature did forbid the making of a tax deed under the circum-

stances disclosed in this case. In view of the fact that the legal title had not passed from the state, and that this was a school land sale, it clearly was within the constitutional rights of the Legislature so to do. The policy of the Legislature in so declaring appears to be not only allowable, but indicative of discretion in preventing the clouding of titles to lands controlled by trustees for public purposes.

These remarks are applicable to the contentions of John M. Sturgeon, who has filed a brief and has cited a great many cases, and has urged that, under article 10, sec. 5, of the Constitution, the tax deed was permissible in this case. However, that article of the Constitution is not here applicable for the purpose invoked, for the reason that the title never passed out of the public authorities. With reference to the contention that, unless the county clerk had put his warrant on the tax roll, there could be no sale, we think that the statute relied upon by the Godfrey Investment Company had fallen into disuse at the time that the tax sale was had, result'ng in a buying in by the county in this case.

The law relied upon by the Godfrey Investment Company is found in section 6 of art. 8, ch. 38, at p. 603, of the Session Laws of 1909. However, the Laws of 1910 and 1911, section 13 of chapter 152, creating the office of county assessor, provides as follows:

"Sec. 13. The county excise board shall certify all levies to the assessor, and he shall proceed, on receipt of same, to make out the tax rolls with complete abstract, showing the total amount of personal, real and corporation taxes, as now provided by law, and when complete he shall file same, with the county treasurer, not later than October 1st, and a true and correct abstract of same with the county clerk, and the county clerk shall charge the county treasurer with the amount contained in said abstract."

We think that, under this section, the county had a right to buy in the land at the tax sale, and that the assignment of the county's rights to the defendant in error John M. Sturgeon was not forbidden by law, and that having bought the right of the county, though he was in error about getting his deed, his claims to the property, arising from such purchase, are superior to that of the Godfrey Investment Company, and that the court below did not err in so decreeing.

Defendant John M. Sturgeon has filed a brief and counter-petition in error, but the point raised is that the court should have held the tax deed good. The observations heretofore made, and the section of the statute cited, are decisive of that question.

Finding no reversible error in this case, it is accordingly affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.